IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CV 01-857-PA |
| | ) | |
| and | ) | |
| | ) | |
| TIFFANIE ALVERA, | ) | **OPINION** |
| | ) | |
| | ) | |
| Plaintiff-Intervenor, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE C.B.M. GROUP, INC., a | ) | |
| California Corporation, CREEKSIDE | ) | |
| VILLAGE APARTMENTS, a Limited | ) | |
| Partnership, EDWARD MACKAY AND | ) | |
| DORIAN MACKAY, General Partners, | ) | |
| KAREN MOCK, and INEZ CORENEVSKY, | ) | |
| | ) | |
| Defendants. | ) | |

MICHELLE RYAN
Oregon Law Center
813 SW Alder Street, #500
Portland, OR 97205

ELLEN JOHNSON

1 -- OPINION

Legal Aid Services of Oregon
230 NE 2nd Avenue, Suite A
Hillsboro, OR 97124

    Attorneys for Plaintiff-Intervenor
    Tiffanie Alvera

WM. KELLY OLSON
SHAWN M. O'NEIL
Mitchell, Lang & Smith
2000 One Main Place
101 SW Main Street
Portland, OR  97204

    Attorneys for Defendants

**PANNER, J.**

    Plaintiff United States brings this housing

discrimination action against defendants C.B.M. Group, Inc.,

Karen Mock, Inez Corenevsky, Creekside Village Apartments,

Edward Mackay, and Dorian Mackay, alleging violations of the

Fair Housing Act, 42 U.S.C. §§ 3601 to 3631.  Tiffanie Ann

Alvera, the alleged victim of defendants' housing

discrimination, intervened as a plaintiff.  (I refer to Alvera

as plaintiff.)

    The parties settled.  Defendants agreed to a consent

decree and to pay plaintiff $25,000 without admitting

liability.

    Plaintiff seeks attorney's fees and costs.  I award

plaintiff $25,628.75 in attorney's fees and $754.98 in costs.

                        **BACKGROUND**

2 -- OPINION

Plaintiff and her husband rented an apartment in Seaside, Oregon, from defendants. In August 1999, plaintiff's husband assaulted her in their apartment, breaking her cheekbone and causing a concussion. After being treated at a hospital, plaintiff obtained a temporary restraining order barring her husband from the apartment.

Plaintiff showed a copy of the temporary restraining order to the resident apartment manager and asked that her husband be removed from the lease. Defendants instead issued a 24-hour eviction notice to plaintiff based on their policy of "zero-tolerance" for violence on the premises.

According to plaintiff, defendants allowed her to remain in the apartment but for two months refused to rent a one-bedroom apartment to her. Plaintiff states that when defendants did allow her to rent a one-bedroom apartment, it was only on the condition that she would be subject to eviction if she were again the victim of domestic violence.

In October 1999, plaintiff filed a complaint with the United States Department of Housing and Urban Development (HUD), alleging that defendants had discriminated against her based on sex. HUD investigated plaintiff's allegations and found reasonable cause to believe that defendants had discriminated against plaintiff. After attempting

3 -- OPINION

unsuccessfully to resolve the dispute, in April 2001, HUD charged defendants with committing discriminatory housing practices.

Plaintiff retained Ellen Johnson, an attorney with Legal Aid Services of Oregon (LASO). LASO attempted to refer plaintiff's case to two private attorneys in the Portland area, but both attorneys refused.

LASO associated Michelle Ryan, an attorney with the Oregon Law Center. Ryan, a legal services attorney since 1979, has represented low-income tenants in state and federal court for seventeen years.

LASO also sought assistance from the National Organization of Women's Legal Defense and Education Fund (NOW Legal Defense), and the Women's Rights Project of the American Civil Liberties Union (ACLU WRP), both of which are in New York City. David Thornburgh, LASO's director, states that plaintiff sought attorneys from NOW Legal Defense and the ACLU WRP because of their expertise in domestic violence law and in federal appeals. NOW Legal Defense and ACLU WRP also were to share the cost of hiring experts and preparing evidence for trial.

In June 2001, the United States filed its complaint in this court against defendants. The United States' complaint

alleged that defendants had discriminated against plaintiff because of sex in violation of the Fair Housing Act, 42 U.S.C. § 3604(a).   In July 2001, plaintiff filed her complaint in intervention.  Plaintiff's complaint asserted disparate treatment and impact claims under the Fair Housing Act, and claims under Oregon fair housing statutes.  Plaintiff also pleaded a common law claim for intentional infliction of emotional distress.

On August 24, 2001, defendants filed their answers to the complaints.  Other than two motions for extension of time, the parties filed no motions before the case settled in November 2001.  No depositions were taken.

Plaintiff's attorneys, however, were not idle.  They wrote discovery requests, negotiated a protective order with defendants that was never entered, and drafted a motion to compel that was never filed.

The parties disagree on defendants' cooperation with plaintiff's discovery requests.  Plaintiff states that "[a]ttempts to confer with Defendants' counsel to resolve the discovery disputes were fruitless, primarily because Defendants' counsel displayed little familiarity with Defendants' documents."  Mem. in Supp. of Fees, at 7. Plaintiff states that defendants objected to 25 of her 26

5 -- OPINION

requests for production of documents, and failed to produce a
single document or a privilege log.

Defendants state they reasonably objected to plaintiff's
requests as overbroad because she sought defendants' records
for the previous nine years, including papers that defendants
considered privileged, regarding all of defendants'
properties.  According to plaintiff, defendants own hundreds
of residential properties in five states.

Defendants state that they agreed to provide records for
the time of plaintiff's rental, between November 1998 and
October 1999.  Defendants also proposed a protective order for
documents that they considered confidential.

Defendants' attorney Shawn O'Neil states that he revised
the draft protective order eight times at plaintiff's request.
O'Neil then sent plaintiff a proposed protective order that he
thought plaintiff had approved, along with a banker's box of
documents that defendants considered privileged and covered by
the protective order.  Plaintiff, however, requested
additional changes to the proposed order and returned the
documents, apparently without examining them.  The case
settled and the protective order was never entered.

The parties also dispute defendants' willingness to
discuss settlement.  Defendants state that from the outset of

6 -- OPINION

this litigation, they informed Ellen Johnson, one of plaintiff's local attorneys, as well as the assistant United States attorneys, that defendants were "highly motivated" to settle.  Defendants state that the first settlement offer they received from plaintiff was on July 20, 2001, about two weeks after plaintiff filed her complaint in intervention.

According to plaintiff, however, she made a settlement offer as early as December 1999, which defendants rejected in April 2000.  Plaintiff also states that in May 2001, she made another settlement offer to defendants, which included monetary damages and injunctive relief.  Defendants responded with an offer of $8,500 and no injunctive relief.

Plaintiff states that her next offer of settlement was the one she made on July 20, 2001.  Defendants asked for more time to consider the offer, which was to expire July 30, 2001. According to Ellen Johnson, defendants did not respond to her request that they show a commitment to settlement discussions and they made no counter-offer.

The parties agreed on a mediator, Judge Edward Leavy of the Ninth Circuit Court of Appeals.  On October 2, 2001, the first day available for Judge Leavy, the parties resolved almost all of their differences.  Defendants agreed, with minor modifications, to a consent decree proposed by the

7 -- OPINION

United States.  I signed the stipulated consent decree on November 5, 2001.

The consent decree enjoins defendants from evicting any tenant for being a victim of domestic violence, or discriminating against any person for being a victim of domestic violence.  The consent decree requires that defendants notify tenants and employees of these policies, and keep records on evictions.  The consent decree, which is effective for five years, provides that the United States will monitor enforcement of the decree.  Defendants separately agreed to pay plaintiff $25,000 without admitting liability.

Plaintiff seeks attorney's fees for five lawyers who represented her during this litigation:  Michelle Ryan, the attorney from the Oregon Law Center; Lenora Lapidus, director of the ACLU WRP; Emily Martin, an attorney with the ACLU WRP; Wendy R. Weiser, an attorney with NOW Legal Defense; and Martha F. Davis, legal director of NOW Legal Defense.  Ellen Johnson, the attorney with LASO, is precluded from seeking fees here.  Plaintiff also seeks fees for several law students who worked on the case.  In the exercise of billing judgment, plaintiff does not seek fees for several other attorneys and law students.

**STANDARDS**

8 -- OPINION

Plaintiff seeks attorney's fees under the Fair Housing Act, 42 U.S.C. § 3613(c)(2), which provides that the district court "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs."  In calculating attorney's fees under § 3613, courts may look to opinions applying 42 U.S.C. § 1988, the statute governing attorney's fees for civil rights claims under 42 U.S.C. § 1983.  See Silver Sage Partners, Ltd. v. City of Desert Hot Springs, 251 F.3d 814, 826 n.15 (9th Cir. 2001).

To determine a reasonable attorney's fee, the court should first calculate the lodestar amount, which is the number of hours reasonably spent on the litigation multiplied by reasonable hourly rates.  McGrath v. County of Nevada, 67 F.3d 248, 252 (9th Cir. 1995).  The court must exclude hours that were not reasonably expended.  Id.  The party seeking fees has the burden of showing that the time spent was reasonably necessary to the successful prosecution of the party's claims.  Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 886 F.2d 1545, 1557 (9th Cir. 1989).

After calculating the lodestar amount, the court should then "assess whether the presumptively reasonable lodestar figure should be adjusted on the basis of Kerr factors not already subsumed in the initial calculation."  McGrath, 67

9 -- OPINION

F.3d at 252 (citing <u>Kerr v. Screen Extras Guild, Inc.</u>, 526
F.2d 67, 70 (9th Cir. 1975)[1]).  The lodestar amount is
presumptively reasonable, and the court may use a multiplier
to increase or decrease the lodestar amount only in "'rare'
and 'exceptional' cases, supported by both 'specific evidence'
on the record and detailed findings" that the lodestar amount
is unreasonably low or high.  <u>Pennsylvania v. Delaware Valley
Citizens' Council for Clean Air</u>, 478 U.S. 546, 565 (1986)
(citing <u>Blum v. Stenson</u>, 465 U.S. 886, 898-901 (1984)).

A district court has considerable discretion in
determining a reasonable fee award.  <u>Webb v. Ada County</u>, 195
F.3d 524, 527 (9th Cir. 1999).  Even when the opposing party

---

[1]The <u>Kerr</u> factors are:  (1) the time and labor required;
(2) the novelty and difficulty of the issues; (3) the skill
required; (4) the preclusion of other employment by the
attorney; (5) the customary fee; (6) the contingent or fixed
nature of the fee; (7) the time limits imposed by the client
or circumstances; (8) the amount involved and result obtained;
(9) the experience, reputation, and ability of the attorneys;
(10) the undesirability of the case; (11) the nature and
length of the attorney's professional relationship with the
client; and (12) awards in similar cases.  <u>Kerr</u>, 526 F.2d at
70.  Several <u>Kerr</u> factors are subsumed in the lodestar
calculation, including the novelty and complexity of the
issues, the special skill and experience of counsel, the
quality of the representation, the results obtained, and the
contingency of the fee.  <u>Morales v. City of San Rafael</u>, 96
F.3d 359, 363-64 & n.9 (9th Cir. 1996), <u>amended on other
grounds</u>, 108 F.3d 981 (9th Cir. 1997).  The subsumed factors
"may not act as independent bases for adjustment of the
lodestar."  <u>Cunningham v. County of Los Angeles</u>, 879 F.2d 481,
487 (9th Cir. 1989).

does not make specific objections, the court has an
independent duty to determine whether a fee request is
reasonable.  Gates v. Deukmejian, 987 F.2d 1392, 1401 (9th
Cir. 1992).

## DISCUSSION

### I.  Number of Hours

I will divide the legal work for plaintiff into four
general categories:  drafting the complaint; seeking
discovery; preparing for mediation; and drafting the motion
for attorney's fees.  I will roughly estimate the number of
hours plaintiff seeks for each task based on the time records
submitted by plaintiff.  I have also referred to defendants'
summaries of plaintiff's records.  Because some of plaintiff's
records list several different tasks for single blocks of
time, it is not possible to allocate precisely the time spent
on each task.  I then determine the number of hours that I
find is reasonable for each task.

### A.  Drafting the Complaint

Before filing the complaint, plaintiff's attorneys
investigated plaintiff's factual allegations and researched
legal theories.  Plaintiff contends that this work did not
duplicate the United States' efforts on its complaint because
her complaint included claims for discrimination under both

disparate impact and disparate treatment theories, Oregon
statutory violations, and intentional infliction of emotional
distress.

I estimate that plaintiff seeks more than 90 hours for
drafting complaint and pre-filing factual and legal research.
For Wendy Weiser, plaintiff seeks about 55 hours; for Lenora
Lapidus, about 30 hours; for Martha Davis, 2.75 hours; and for
Michelle Ryan, 5 hours.  Plaintiff also seeks about 24 hours
for Mariamelia Calaf, a law student who researched disparate
impact claims under the Fair Housing Act.

I find that plaintiff seeks far too many hours for
drafting the complaint and pre-filing research.  Plaintiff
bases her discrimination claims on the argument that
defendants' no-violence policy for tenants, although gender-
neutral on its face, discriminated against women because women
are much more likely than men to be the victims of domestic
violence.  Although this may be a novel legal argument, it is
neither complex nor particularly difficult.  Tanzer Aff., at 2
(plaintiff's legal theory is "innovative rather than complex
in the sense that it applies well-established principles to a
new set of facts").  Factually, plaintiff was not starting
from scratch because the United States had already
investigated her allegations.

12 -- OPINION

For Weiser, I find that 20 hours is reasonable.  For
Lapidus, 15 hours is reasonable.  For Calaf, the law student,
I find that 5 hours is reasonable.  I find that the hours
plaintiff requests for Ryan and Davis are reasonable.

**B.  Discovery**

Plaintiff seeks about 75 hours spent on discovery issues,
including drafting a motion to compel and working on a
protective order proposed by defendants.  I cannot determine
exactly how many hours the attorneys spent on discovery.  For
example, several of Lapidus's entries describe telephone calls
with co-counsel regarding "discovery, mediation," "discovery,
conference, mediation, settlement," or "mediation, Consent
Decree, discovery."

Even assuming that defendants unreasonably withheld
documents, I find that plaintiff's attorneys spent far too
much time on discovery.  No depositions were taken, and the
case settled before any motions to compel were filed.  For
Weiser, I find that 15 hours on discovery is reasonable; for
Lapidus, 4 hours; and for Ryan, 4 hours.

**C.  Mediation and Consent Decree**

Plaintiff seeks time spent preparing for and
participating in settlement discussions, and helping the
United States to draft the consent decree.  Because some of

plaintiff's time entries lump these tasks with work on discovery or other issues, I can only roughly estimate the time claimed.

I agree with defendants that plaintiff did not require four attorneys to participate in the mediation discussions, in addition to the two attorneys participating for the United States.  See Tanzer Aff. at 6 (in 18 years of mediating cases, affiant had "never seen three lawyers appear for one client").


For Ryan, I find that 16 hours for her work on settlement and the consent decree is reasonable; for Lapidus, 7.5 hours; for Weiser, 5 hours; and for Davis, 2 hours.

### D.  Motion for Attorney's Fees

Plaintiff seeks more than 150 hours for briefing her motion for attorney's fees.  I find that this amount of time is excessive because the factual and legal issues in seeking attorney's fees were not particularly complex.  I will discount the hours plaintiff's attorneys spent seeking New York or "national" hourly rates.

For Weiser, I find that 20 hours is reasonable; for Lapidus, 7 hours; for Martin, 10 hours; for Ryan, 10 hours; for Davis, 2 hours; for various law students, 10 hours.


14 -- OPINION

## II.  Hourly Rates

### A.  Background

Plaintiff seeks hourly rates of $195 for Ryan; $250 for
Weiser, $350 for Lapidus; $425 for Davis; and $200 for Martin.
Plaintiff also seeks $100 for law students who worked on the
litigation.  Except for Ryan, plaintiff seeks New York hourly
rates.

### B.  Standards

In determining the reasonable hourly rate, the court
generally applies the "prevailing market rates in the relevant
community." Blum, 465 U.S. at 895.  The "relevant community"
is usually the forum where the district court sits. Barjon v.
Dalton, 132 F.3d 496, 500 (9th Cir. 1997).  The court
determines what a lawyer of comparable skill, experience, and
reputation could command in the relevant community. Blum, 465
U.S. at 895 n.11; see also Robins v. Scholastic Book Fairs,
928 F. Supp. 1027, 1033 (D. Or. 1996), aff'd, 116 F.3d 485
(9th Cir. 1997) (table, text in Westlaw).  The fee applicant
has the burden of producing satisfactory evidence, in addition
to the affidavits of counsel, that the requested rates are in
line with those prevailing in the community for similar
services of lawyers of reasonably comparable skill and
reputation. Jordan v. Multnomah County, 815 F.2d 1258, 1263

15 -- OPINION

(9th Cir. 1987).

### C. Discussion

#### 1. Michelle Ryan

I find that Michelle Ryan's requested hourly rate of $195 is reasonable in light of her considerable experience and her expertise in fair housing litigation.

#### 2. New York Counsel

Plaintiff contends that this litigation was too difficult and complicated for attorneys in Portland to handle, justifying assistance from out-of-state counsel. Plaintiff seeks New York City hourly rates for attorneys with NOW Legal Defense and the ACLU Women's Rights Project.

David Thornburgh, executive director of the Oregon Law Center, states that plaintiff joined other counsel, including the out-of-state attorneys, because plaintiff raised complex issues regarding domestic violence and fair housing; asserted a disparate impact claim; challenged a large federally subsidized landlord; and implicated HUD's "one strike" rule. Thornburgh also states that the threat of attorney's fees would encourage defendants to settle, and that two issues were likely to be appealed if the case did go to trial.

Spencer Neal, an excellent and very experienced local civil rights attorney, states that "there are few to no

16 -- OPINION

attorneys in Oregon with the qualifications and experience of NOW Legal Defense and ACLU WRP relevant to the issues raised in this case.  Specifically, I am aware of no attorneys who have the experience in the area of domestic violence, housing law and sex discrimination that would be available in this district to handle to this case pro bono publico."  Neal Aff., ¶ 9.

Based on my knowledge of the local bar, I am confident that many Portland attorneys could have competently represented plaintiff in this litigation.  The legal and factual issues were not so complicated, difficult, or unpopular as to require the assistance of out-of-state attorneys.  The fact that two local attorneys rejected the case is not proof that no other local attorneys would have competently represented plaintiff.

I find that $195 per hour, the rate sought by Ryan, is also a reasonable local rate for Davis in light of Davis's extensive litigation experience.  For Lapidus, with about 10 years' litigation experience, I find that $175 per hour is reasonable.  For Weiser, with about 4 years' of litigation experience, and for Martin, with about 2 years' of litigation experience, I find that $150 per hour is reasonable.  I find that $75 per hour is reasonable for the law students who

17 -- OPINION

worked on this case.  In determining these rates, I have
relied on the Oregon State Bar's most recent survey, adjusted
for inflation, and my knowledge of the local market for
attorneys' services.

### D.  Lodestar Amount

I find that plaintiff is entitled to 60 hours for Weiser
at $150 per hour, for a total of $9,000; 33.5 hours for
Lapidus at $175, $5,862.50; 6.75 hours for Davis at $195,
$1,316.25; 35 hours for Ryan at $195, $6,825; 10 hours for
Martin at $150, $1,500; and 15 hours for law students at $75,
$1,125, for a grand total of $25,628.75, which is the lodestar
amount.

I find no reason to adjust the lodestar.

## III.  Costs

Plaintiff seeks $754.98 in costs.  I find that the
requested costs are reasonable.

### CONCLUSION

Plaintiff-intervenor's motion for attorney's fees (#34)
is granted and plaintiff-intervenor is awarded $25,628.75 in
/ / / /
attorney's fees and $754.98 in costs.

Dated May 8, 2002.

                                        /s/ Owen M. Panner
                               _____

18 -- OPINION

OWEN M. PANNER
U.S. DISTRICT COURT JUDGE

19 -- OPINION